```
                    UNITED STATES DISTRICT COURT
                       DISTRICT OF NEW JERSEY
```

PETER R.,[1]

        Plaintiff,      Civ. No. 1:22-cv-05268-NLH

  v.                    **OPINION**

COMMISSIONER OF SOCIAL
SECURITY,

        Defendant.

**APPEARANCES**:

SAMUEL FISHMAN
CHERMOL & FISHMAN, LLC
11450 BUSTLETON AVENUE
PHILADELPHIA, PA 19116

    *Attorney for Plaintiff*

STUART WEISS
SOCIAL SECURITY ADMINISTRATION, OFFICE OF PROGRAM LITIGATION
OFFICE OF THE GENERAL COUNSEL
6401 SECURITY BOULEVARD
BALTIMORE, MD 21235

    *Attorney for Defendant*

---

[1] Plaintiff will be referred to only by his first name and last initial or as "Plaintiff." See STANDING ORDER 2021-10, available at https://www.njd.uscourts.gov/sites/njd/files/SO21-10.pdf, providing, "[I]n opinions issued in cases filed pursuant to Section 205(g) of the Social Security Act, 42 U.S.C. § 405(g), in the United States District Court for the District of New Jersey, any non-government party will be identified and referenced solely by first name and last initial. This change will only apply to the opinions issued in Social Security cases, and will not apply to the PACER docket, which will continue to display the non-government party's full name. Cases filed on behalf of a minor will continue to refer to the minor by first and last initial."

1

**HILLMAN**, District Judge

This matter comes before the Court pursuant to Section 205(g) of the Social Security Act, as amended, 42 U.S.C. § 405(g), regarding Plaintiff's application for Disability Insurance Benefits ("DIB"). The issue before the Court is whether the Administrative Law Judge ("ALJ") erred in finding that there was "substantial evidence" that Plaintiff was not disabled at any time since his alleged onset date of disability, February 1, 2016. For the reasons stated below, this Court will affirm that decision.

I.   BACKGROUND AND PROCEDURAL HISTORY

On May 19, 2016, Plaintiff protectively filed an application for DIB,[2] alleging that he became disabled as of February 1, 2016. (R. at 192–193). Plaintiff claims that as of that date he could no longer work due to his "history of heart attack, extreme fatigue, high blood pressure, degenerative disc disease, gastroesophageal reflux disease (GERD), high cholesterol, memory problems, and asthma." (ECF 9 at 11).

After his claim was denied on October 13, 2016 (R. at 114-19), and reconsideration was denied on January 6, 2017 (R. at

---

[2] A protective filing date marks the time when a disability applicant made a written statement of his or her intent to file for benefits. That date may be earlier than the date of the formal application and may provide additional benefits to the claimant. See SSA Handbook 1507; SSR 72-8.

2

121-26), Plaintiff requested a hearing before an ALJ (R. at 128-29).  The hearing was held on October 26, 2018 before ALJ John Martin.  (R. at 15).  Plaintiff testified as well as a vocational witness.  (Id.)  On January 10, 2019, ALJ Martin issued an unfavorable decision.  (R. at 15-24).  Plaintiff's Request for Review was denied by the Appeals Council on March 17, 2020 (R. 1-6), making ALJ Martin's January 10, 2019 decision final.  Plaintiff filed a complaint in this Court, and on April 13, 2021, this Court entered a consent order to remand.  (R. 715-16).  This matter was thus remanded.  (R. 718-24).

On December 2, 2021, a new hearing was held before ALJ Karen Shelton.  (R. 663).  Plaintiff and a different vocational witness from the first hearing testified.  (Id.).  On May 2, 2022, ALJ Shelton issued an unfavorable decision.  (R. 640-57).  Plaintiff did not appeal to the Appeals Council, but filed the instant civil action on August 28, 2022.  (ECF 1).[3]

---

[3] Because Plaintiff's case was previously remanded by a federal court, he was not required to seek review before the Appeals Council.  20 C.F.R. § 404.984(a).  Where the claimant does not file exceptions to the Appeals Council, the Appeals Council may elect on its own to assume jurisdiction within sixty days of the ALJ's decision on remand. Id.  Where the claimant does not file exceptions and the Appeals Council does not otherwise assume jurisdiction, the ALJ's decision on remand is the final decision of the Commissioner.  20 C.F.R. § 404.984(d).  See also Roberto M. v. Kijakazi, No. 2:19-CV-8326, 2021 WL 4988486, at *2 (D.N.J. Oct. 27, 2021) ("Plaintiff did not file exceptions to [the ALJ's] 2018 decision [on remand] and the Appeals Council did not assume jurisdiction, making [the ALJ's] 2018 decision the final agency decision."); Orta v. Comm'r of Soc. Sec., No. CV 18-

## II. DISCUSSION

### a. Standard of Review

Under 42 U.S.C. § 405(g), Congress provided for judicial review of the Commissioner's decision to deny a complainant's application for social security benefits. Ventura v. Shalala, 55 F.3d 900, 901 (3d Cir. 1995). A reviewing court must uphold the Commissioner's factual decisions where they are supported by "substantial evidence." 42 U.S.C. §§ 405(g), 1383(c)(3); Fargnoli v. Massanari, 247 F.3d 34, 38 (3d Cir. 2001); Sykes v. Apfel, 228 F.3d 259, 262 (3d Cir. 2000); Williams v. Sullivan, 970 F.2d 1178, 1182 (3d Cir. 1992). Substantial evidence means more than "a mere scintilla." Richardson v. Perales, 402 U.S. 389, 401 (1971) (quoting Consolidated Edison Co. v. NLRB, 305 U.S. 197, 229 (1938)). In other words, "[i]t means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Id. The inquiry is not whether the reviewing court would have made the same determination, but whether the Commissioner's conclusion was reasonable. Fargnoli, 247 F.3d at 38.

A reviewing court has a duty to review the evidence in its totality. See Daring v. Heckler, 727 F.2d 64, 70 (3d Cir.

---

03230, 2020 WL 525939, at *1 (D.N.J. Jan. 31, 2020). Here, Plaintiff did not file exceptions on remand and the Appeals Commission did not assume jurisdiction. Thus, ALJ Shelton's decision became the Commissioner's final decision.

4

1984).  "[A] court must 'take into account whatever in the record fairly detracts from its weight.'"  Schonewolf v. Callahan, 972 F. Supp. 277, 284 (D.N.J. 1997) (quoting Willbanks v. Secretary of Health & Human Servs., 847 F.2d 301, 303 (6th Cir. 1988)).

The Commissioner "must adequately explain in the record his reasons for rejecting or discrediting competent evidence." Ogden v. Bowen, 677 F. Supp. 273, 278 (M.D. Pa. 1987) (citing Brewster v. Heckler, 786 F.2d 581 (3d Cir. 1986)).  The Third Circuit has held that an "ALJ must review all of the pertinent medical evidence, explaining his conciliations and rejections." Burnett v. Comm'r of Soc. Sec. Admin., 220 F.3d 112, 122 (3d Cir. 2000).  Similarly, an ALJ must also consider and weigh all of the non-medical evidence before him.  Id.  (citing Van Horn v. Schweiker, 717 F.2d 871, 873 (3d Cir. 1983)); Cotter v. Harris, 642 F.2d 700, 707 (3d Cir. 1981).

The Third Circuit has held that access to the Commissioner's reasoning is indeed essential to a meaningful court review:

> [U]nless the [Commissioner] has analyzed all
> evidence and has sufficiently explained the
> weight he has given to obviously probative
> exhibits, to say that his decision is
> supported by substantial evidence approaches
> an abdication of the court's duty to
> scrutinize the record as a whole to

5

> determine whether the conclusions reached are rational.

Gober v. Matthews, 574 F.2d 772, 776 (3d Cir. 1978) (citation omitted). Although an ALJ, as the fact finder, must consider and evaluate the medical evidence presented, Fargnoli, 247 F.3d at 42, "[t]here is no requirement that the ALJ discuss in its opinion every tidbit of evidence included in the record," Hur v. Barnhart, 94 F. App'x 130, 133 (3d Cir. 2004). In terms of judicial review, a district court is not "empowered to weigh the evidence or substitute its conclusions for those of the fact-finder." Williams, 970 F.2d at 1182. However, apart from the substantial evidence inquiry, a reviewing court is entitled to satisfy itself that the Commissioner arrived at his decision by application of the proper legal standards. Sykes, 228 F.3d at 262; Friedberg v. Schweiker, 721 F.2d 445, 447 (3d Cir. 1983); Curtin v. Harris, 508 F. Supp. 791, 793 (D.N.J. 1981).

    **b. Standard for DIB**

The Social Security Act defines "disability" for purposes of an entitlement to a period of disability and disability insurance benefits as the inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death, or which has lasted or can be expected to last for a continuous period of not less than 12 months. See 42 U.S.C. §

1382c(a)(3)(A). Under this definition, a Plaintiff qualifies as disabled only if his physical or mental impairments are of such severity that he is not only unable to perform his past relevant work, but cannot, given his age, education, and work experience, engage in any other type of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work. 42 U.S.C. § 1382c(a)(3)(B) (emphasis added).

The Commissioner has promulgated regulations for determining disability that require application of a five-step sequential analysis. See 20 C.F.R. § 404.1520. This five-step process is summarized as follows:

1. If the claimant currently is engaged in substantial gainful employment, he will be found "not disabled."

2. If the claimant does not suffer from a "severe impairment," he will be found "not disabled."

3. If the severe impairment meets or equals a listed impairment in 20 C.F.R. Part 404, Subpart P, Appendix 1 and has lasted or is expected to last for a continuous period of at least twelve months, the claimant will be found "disabled."

7

4. If the claimant can still perform work he has done in the past ("past relevant work") despite the severe impairment, he will be found "not disabled."

5. Finally, the Commissioner will consider the claimant's ability to perform work ("residual functional capacity"), age, education, and past work experience to determine whether or not he is capable of performing other work which exists in the national economy. If he is incapable, he will be found "disabled." If he is capable, he will be found "not disabled."

20 C.F.R. § 404.1520(a)-(g).  Entitlement to benefits is therefore dependent upon a finding that the claimant is incapable of performing work in the national economy.

This five-step process involves a shifting burden of proof. See Wallace v. Secretary of Health & Human Servs., 722 F.2d 1150, 1153 (3d Cir. 1983).  In the first four steps of the analysis, the burden is on the claimant to prove every element of his claim by a preponderance of the evidence.  See id.  In the final step, the Commissioner bears the burden of proving that work is available for the Plaintiff: "Once a claimant has proved that he is unable to perform his former job, the burden shifts to the [Commissioner] to prove that there is some other kind of substantial gainful employment he is able to perform."

8

Kangas v. Bowen, 823 F.2d 775, 777 (3d Cir. 1987); see Olsen v. Schweiker, 703 F.2d 751, 753 (3d Cir. 1983).

### c. Analysis

At step one, the ALJ found that Plaintiff had "not engaged in substantial gainful activity during the period from his alleged onset date of February 1, 2016 through his date last insured of December 31, 2019."  (R. at 643).

At step two, the ALJ determined that Plaintiff had severe impairments including "coronary artery disease (status post cardiac catheterization and stent implantation); obesity; degenerative disc disease of the lumbar and cervical spine; and osteoarthritis of the right acromioclavicular joint."  (Id.). The ALJ discussed additional alleged impairments that she did not find severe, including hearing loss, hypertension, gastroesophageal reflux disease, memory problems, and mental health impairments.  (R. 643–45).

At step three, the ALJ concluded that Plaintiff "did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1."  (R. at 646).

Next, before proceeding to step four, the ALJ determined Plaintiff's residual functional capacity.  (R. at 648).  The ALJ found that Plaintiff had the residual functional capacity

> to perform sedentary work as defined in 20 CFR 404.1567(a) except he was able to occasionally climb ramps/stairs and never climb ladders, ropes, or scaffolds; occasionally balance, stoop, kneel, crouch, and crawl; frequently perform overhead reaching; needed to avoid and have less than occasional exposure to cold, heat, wetness, humidity, and pulmonary irritants; and could have had no exposure to unprotected heights or hazardous machinery.

(R. at 648). Finally, at step four, the ALJ determined that Plaintiff "was capable of performing past relevant work as a vice president of sales." (R. at 655).

Plaintiff argues that the ALJ erred in that: (1) the ALJ failed to address conflicting evidence from vocational experts about his past relevant work; (2) the ALJ failed to include certain limitations that she had found in the RFC; and (3) the ALJ misapplied the law in determining that Plaintiff's cognitive disorder was not a medically determinable impairment. (ECF 9 at 9). This Court will address each argument in turn.

### i. Past Relevant Work

Plaintiff argues that the ALJ erred in determining that he could perform past relevant work. (ECF 9 at 12). "Past relevant work is defined as work that the claimant has done within the past 15 years, that was substantial gainful activity, and that lasted long enough for the claimant to learn how to do it. Allen v. Comm'r of Soc. Sec., 475 F. Supp. 3d 413, 418 (M.D. Pa. 2020) (citing 20 C.F.R. § 404.1560(b)).

10

Plaintiff first compares ALJ Shelton's determination to the vacated decision from ALJ Martin. (ECF 9 at 13). Plaintiff claims that ALJ Martin's decision was remanded because ALJ Martin determined that Plaintiff had worked as a vice president for two years and had found that this was past relevant work that Plaintiff could perform, but according to the DOT it takes four years to learn the vice president occupation. (Id. at 13-14). Thus, Plaintiff takes issue with ALJ Shelton determining that he could perform past relevant work as a vice president. (Id. at 14).

Contrary to Plaintiff's characterization, the ALJ directly addressed this question. (R. at 656). The ALJ explained that the Appeals Council noted in its Remand Order that Plaintiff's job as a vice president of sales under DOT #189.117.034 did not constitute past relevant work because he had not performed the job for the four years required to learn the job. (Id.). Then the ALJ explained that Plaintiff testified at the second hearing that his job as "director/manager" for a trucking company from 1977 to 2010 and his job as vice president for a trucking company from 2012 to 2014 were "essentially the same." (Id.). At the hearing, the vocational witness characterized both of these positions under the same DOT title. (Id.). The ALJ therefore concluded that Plaintiff performed this work "for well

11

over the 4-8 years required to learn the required skills of this SVP 8 level work." (Id.).

Second, Plaintiff argues that ALJ Shelton erred in relying on testimony presented by the vocational witness in Plaintiff's second hearing — the hearing before ALJ Shelton — and failing to explain why she did not rely on the first vocational witness that testified in Plaintiff's first hearing before ALJ Martin. (ECF 9 at 14-15). The ALJ was not required to specifically discuss the testimony from the first vocational witness. Johnson v. Colvin, No. CIV.A. 14-1167, 2015 WL 1954644, at *4 (W.D. Pa. Apr. 29, 2015) ("As a general matter, the ALJ properly relied on the vocational expert's testimony from the Second Hearing, and was not required to address the vocational expert's testimony from the First Hearing."). Moreover, while the ALJ did not refer to the testimony from the first vocational witness, the ALJ pointed to new testimony from Plaintiff presented at the second hearing as well as testimony from the second vocational witness. (R. 656).

Third, Plaintiff claims that testimony from the two vocational witnesses identified two separate DOT sections to define Plaintiff's past work. (ECF 9 at 17). Plaintiff points to testimony from the first vocational witness, who determined that from 1977 to 2012 he worked as a sales manager and from 2012 to 2014 he worked as a vice president. (Id. at 15).

12

Plaintiff argues that "[t]he fact that two vocational witnesses identified different DOT sections as defining [Plaintiff's] occupation from 1977 to 2010" demonstrates that his past work was a "composite job." (Id. at 17). Plaintiff characterizes his past work as a "composite job," which he asserts may not form the basis for a conclusion that he could perform work as generally performed in the national economy. (Id.). Rather, composite jobs may only support a conclusion that Plaintiff could perform the past work as actually performed. (Id.).

Based on new testimony from Plaintiff at the second hearing the second vocational witness testified that Plaintiff's work at two different companies with two different job titles both fell under the vice president of sales position under DOT #189.117.034. This past relevant work, as testified to by the second vocational expert, was not a composite position. A composite position is when one prior position falls under two or more DOT titles to describe the full position. Reed v. Berryhill, 337 F. Supp. 3d 525, 529 (E.D. Pa. 2018) ("To qualify as a composite job, the job must contain substantial elements of two or more occupations and lack any counterpart in the DOT.28 In other words, a composite position must involve additional 'main duties' from another DOT position, rather than 'merely excessive function[s] with the job duties from one DOT position.'").

13

The ALJ explained here that "as for the claimant's work as a 'director/manager' and 'vice president' jobs, the claimant testified that both of these jobs were essentially the same, though one involved lass travel, and the vocational expert opined that these two different positions were actually under the same DOT title." (R. at 656). Accordingly, the ALJ did not base her finding of past relevant work on a composite job, rather she found that he worked in the same category of past relevant work while at two different companies. (Id.).

Finally, Plaintiff suggests that the ALJ's "failure to resolve these vocational inconsistences" was due to her failure to consider ALJ Martin's decision in rendering her own. (ECF 9 at 20). ALJ Shelton did not have any obligation to discuss ALJ Martin's decision, which was vacated. Demaio v. Berryhill, No. CV 15-5187, 2017 WL 4618749, at *4 (D.N.J. Oct. 13, 2017) ("In general, an ALJ decision vacated by the Appeals Council has no res judicata effect on a subsequent ALJ decision. . . . Therefore, the ALJ is expected to perform a de novo review on remand."). Moreover, contrary to Plaintiff's characterization, ALJ Shelton specifically addressed the fact that the relevant past work determination was part of the reason for remand, and pointed to specific evidence presented at the second hearing in support of her finding on this point. (R. 565).

Because the ALJ pointed to testimony from the vocational expert in support of her finding, in addition to Plaintiff's own testimony, her finding that Plaintiff had past relevant work as a vice president of sales as defined under the DOT is based on substantial evidence.

### ii. Residual Functional Capacity

Plaintiff argues that the ALJ erred in failing to consider "the medically determinable mental impairment of brain injury" in formulating Plaintiff's RFC. (ECF 9 at 22). Plaintiff explains that even though the ALJ determined that his mental impairment was non-severe, it could still cause limitation and thus must be considered in evaluating the combined effects of his limitations to determine his RFC. (Id. at 24).

The ALJ did discuss limitations related to mental impairment in formulating the RFC. First, the ALJ pointed to Plaintiff's abilities as stated in the Function Report, noting that "[i]n his Function Report, the claimant admitted that despite his symptoms and limitations, [he] could pay attention, complete tasks, follow instructions, get along with authority figures and handle stress/routine changes." (R. 650). Later in the analysis, the ALJ pointed to the record and explained that

> The undersigned assigns great weight to the medical opinions of the state agency psychological consultants, Annette DePaz-Ortiz, Psy.D., and Sydnia Rosado, Ph.D. (Exhibits 1A; 3A). Dr. DePaz-Ortiz and Dr.

15

> Rosado opined that claimant did not have a severe mental impairment and set out mild limitations in the paragraph "B" criteria. The undersigned notes that these opinions gave proper consideration to the claimant's generally normal findings upon mental status examination and lack of any significant mental health treatment, as well as his broad range of residual daily activities.

(R. at 654). Thus, where the ALJ discussed both Plaintiff's mental abilities and pointed to medical opinions that demonstrated "generally normal findings," the ALJ did not fail to consider Plaintiff's mental impairments in formulating his RFC.

### iii. Cognitive Disorder

Plaintiff claims that the ALJ erred in determining that his cognitive disorder was not a medically determinable impairment. (ECF 9 at 30-31). Plaintiff argues that this was both a legal and factual error. (Id. at 31-32). Plaintiff explains that this finding was a legal error because "[t]he ALJ's only basis for this finding was that because it was a singular diagnosis." (Id. at 31). Plaintiff points to certain evidence in the record in support of his argument, specifically "objective testing by Robert Waters, Ph.D., who observed [Plaintiff] recalling zero out of 3 items after a 5 minute delay, with [Plaintiff] recalling only one item with prompting" as well as Plaintiff's routine reporting of memory loss. (Id. at 32). Plaintiff concludes that "[t]he ALJ's conclusion that [Plaintiff's]

16

cognitive disorder was not medically determinable could have only been based on her own lay perception of the evidence, or a failure to carefully review the evidence upon which she relied." (Id. at 34). Plaintiff asserts that this error was harmful because "[i]n finding that [Plaintiff's] cognitive disorder was not medically determinable, the ALJ failed to consider the limitations arising from that impairment or its impact on his ability to perform his past work." (Id.). Thus, Plaintiff explains that the ALJ did not address his mental limitations in formulating the RFC. (Id. at 34).

The ALJ did not hinge her conclusion on the mere fact that there was only one diagnosis, but instead pointed to the fact that the record did not include "corroborating evidence," explaining that "[t]hough Dr. Waters diagnosed him with a cognitive disorder secondary to brain surgery, there is little corroborating evidence of such a condition in the record, and this singular diagnosis alone is insufficient to establish the existence of such a medically determinable impairment; accordingly, this condition is not medically determinable." (R. at 645).

The ALJ expanded that Plaintiff's "[m]ental status examination was also unremarkable in an October 2016 internal medicine consultative examination, with the claimant displaying normal mood/affect, normal concentration, intact short-term

17

memory and intact long-term memory (Exhibit 6F)." (R. at 645). In addition, Plaintiff "was able to return to work at the substantial gainful activity level for almost fifteen years following his brain surgery (Exhibit 2D)." (Id.). The ALJ further notes that "[t]he claimant also acknowledged he has never received treatment for mental health impairments or for cognitive limitations. Indeed, the medical evidence does not appear to contain any treatment for cognitive issues and/or mental health limitations, and in August 2018, his primary care physician noted no signs of depression on a depression screening (Exhibit 8F/1)." (Id.). Therefore, the ALJ based her finding that Plaintiff's cognitive disorder was not a medically determinable impairment on substantial evidence.

Moreover, contrary to Plaintiff's representation, the ALJ did consider Dr. Waters' opinion in formulating the RFC, explaining why she did not credit the opinion:

> In September 2016, Dr. Waters opined the claimant had "severe limitations" due to his physical status and to a lesser extent his short-term memory issues (Exhibit 5F). The undersigned finds this opinion is not consistent with the claimant's generally intact mental status examinations, minimal mental health treatment and broad range of daily activities, and is not adequately supported with references to particular findings or clinical evidence. Accordingly, it is assigned little weight.

18

R. at 654). Thus, Plaintiff's argument that the ALJ's characterization of his alleged cognitive impairment as not medically determinable was harmful error because the ALJ did not consider his cognitive limitations in formulating the RFC is belied by the ALJ's RFC analysis that does include discussion of the cognitive limitations.

### III. CONCLUSION

For the reasons set forth above, the ALJ's decision will be affirmed.

An appropriate Order follows.

Date: June 20, 2023                    s/ Noel L. Hillman
At Camden, New Jersey                  NOEL L. HILLMAN, U.S.D.J.